at all. Arguments not to exceed 15 minutes to decide. Mr. Rivers for the appellant. Thank you. Good morning to the court. May it please the court. Frank Rivers on behalf of the appellant Joan McCray. With the court's permission I'd like to reserve the final 5 minutes of my time for rebuttal. I know the court is very familiar with the briefs so I just want to touch on some of the very key points here. With respect to the Michigan Whistleblower Protection Act claim, just to clarify in terms of what Ms. McCray reported regarding the status of the Detroit Public Schools budget. Ms. McCray reported in June 2008 that the school system would operate under a deficit, in other words a budget deficit for the 07-08 fiscal year. She also reported that as a result of that budget deficit it was likely that the district was going to experience a deficit budget for the upcoming year and in fact she recommended that the district as part of a deficit elimination plan adopt a deficit budget and a plan to reduce that budget, that deficit over the upcoming two years. That recommendation was entirely allowed under the Michigan State School Aid Act. Ms. McCray also reported in June 2008 that for the past several previous years going back to 2004 the district had actually operated under deficits but had incorrectly reported to the state of Michigan that it operated under balanced budgets. So it was those three things that Ms. McCray reported in June of 2008. Now the district court in this case only considered the fact that Ms. McCray had also made reports to the board starting in August and September of 2007 that there had been mismanagement of state funding. It's not disputed that she made those reports. The issue and the problem in this case is that the court disregarded the fact entirely that Ms. McCray had made those additional reports in June of 2008 and as a result disregarded the evidence showing a causal connection between those reports and Ms. McCray's termination in December of 2008. I can't remember, did the district court not talk at all about the June 2008 reports? It did address that Your Honor and what the district court indicated was that those reports regarding the fact that there was a operating deficit and also the fact that there would be a deficit budget, the district court indicated that those reports were not protected activity under the Michigan with Supporter Protection Act and that is the Why isn't the district court correct on that? They're absolutely incorrect on that as we state in our briefs under the Michigan State School Act, it is a violation of that act for a district to either incur a deficit, adopt a deficit budget or operate under a deficit budget and that's outlined in our brief at, excuse me Your Honor, in Plaintiff's brief at page 36. So it clearly was a violation that Ms. McCray was reporting to the board, a violation of the State School Aid Act for DPS to opt... The remedy when that happens under the act, does the act set out a remedy? It actually does Your Honor and that is exactly what Ms. McCray was recommending to the board. The remedy for the district incurring a deficit is to lay out what's called a deficit elimination plan whereby the district will explain to the state how it proposes to reduce that deficit over the upcoming two years and that's the plan that Ms. McCray recommended to the board. Opposing counsel indicated that the plan that Ms. McCray recommended to the board was illegal and that's absolutely incorrect. The Michigan State School Aid Act specifically says that that plan that Ms. McCray recommended is entirely permissible under the act. So it's a little bit confusing. It's permissible to have a deficit budget? It is not, and just to be clear Your Honor, it is not, it is not, definitely not permissible for any school district under this act to incur or operate under a deficit. However, in the event that the district does incur a deficit, the act does allow for the district to implement a plan to reduce that deficit. What, what, I guess the next step in the prima facie case is to develop the causal connection between protected activity and the termination? Certainly. Well Your Honor, actually that goes to my next point. In this case, there was direct evidence that the board threatened Ms. McCray if in fact she went forward with this report that there, that a deficit had been incurred and that the district was going to adopt a deficit budget. So first of all, there's direct evidence that Ms. McCray was threatened and that threat in and of itself is a violation of the Wisla Board Protection Act. Secondly, that threat is supporting evidence for the prima facie claim. The, Dr. Womack, one of the board members specifically threatened Ms. McCray and told her if you make this report and result in there is an emergency financial manager that's going to be appointed, you're going to be fired. And in fact, in December of 2008, that's exactly what happened, is that the state of Michigan appointed an emergency financial manager to take over the financial affairs of the board, of the district, excuse me. And the district, a week after that announcement, fired Ms. McCray. Didn't even wait until the end of her contract, which was going to be at the end of that month. So we think that there's a definite causal connection between Ms. McCray's report, the threat, and then the timing of Ms. McCray's... Does the district have taxing power? I'm sorry, Your Honor? Does the school district have taxing power? How do they get their money? By tax assessments and collections by the district or how? Well, Your Honor, I can't speak to that question entirely. I do know that one of the ways that the district raises funds is through the issuance of bonds. Also, the district does receive... You have to pay bonds off, and you have to raise the money some way to do that. That's correct, Your Honor. My question is, what is the procedure, what's the practice there in Detroit? Your Honor, and I do apologize to the court, I can't speak to that question entirely. I do know that... As far as the school funds, there's a line item on the local property tax assessments that would be the primary funding source. Wouldn't that be... Maybe you're not aware of it, but I thought that was where the majority of the budget for the schools came from. And again, I do apologize to the court. I can't speak to that question with any authority. I do know that the funding does come from state and federal sources. There's a recent Supreme Court case, University of Texas Southwestern Medical Center versus Nassar, which is dealing with the causation standard in Title VII retaliation cases. Do you know whether the Michigan courts have adopted, for purposes of the Michigan Whistleblower Act, the same standard as the Nassar? I'm not familiar with the case that the court's referring to, but I am very familiar with the Michigan Whistleblower Protection Act, and I can say with authority that Michigan has not adopted a Title VII standard. So what is the causation standard that you must satisfy? What's the phraseology that Michigan uses? Michigan uses the phraseology that the plaintiff must show that there was a correlation between the protected activity and the wrongful act. So in other words, it has to be more likely than not that the plaintiff engaged in this activity and that that was the reason that the defendant took the adverse employment action. It doesn't have to be the main reason that the defendant took the action. It doesn't have to be the only reason that the defendant took the action. It simply has to be one of the reasons that the defendant took the action. Can you say to the district courts, I believe it was the district court's ruling or explanation, that when she reported the deficit problem in the school district, she was praised by the board for doing her job and finding out about this when others had not, and that it was only much later after hostilities developed between her and some members of the school board that she was discharged under a contract that allowed her to be discharged for any reason or no reason. What do you say to that conclusion by the district court? Certainly, your honor, and that goes to the heart of our appeal here. When Ms. McRae made those reports regarding state, you know, mismanagement of state funding back in August and September of 2007, it's true that the board and the school board said, gee, that's a nice job, Ms. McRae. It wasn't until the June 2008 reports that the board reacted unfavorably to Ms. McRae, and the reason being these reports that she was making in June of 2008 meant that almost certainly the state was going to step in and appoint an emergency financial manager. So the motivation for the state to step in, it was definitely there with respect to these reports in June of 2008 because it meant that there was going to be an emergency financial manager appointed, and that's exactly what happened. Didn't she tell them earlier that unless something changed, there would continue to be a deficit of spending by the board? Didn't she tell them a year or so before when they praised her, didn't she tell them at that time also that there had been for some previous years deficit spending, and the same would be true in the ensuing year unless there were a change? Your honor, actually I think what the defendants have claimed in this case is that Ms. McRae was told by certain members of the financial administration that there was going to be a deficit that was going to be incurred, and that's one of the disputed issues is whether or not the defendants fired Ms. McRae because she knew early on that there was going to be a deficit or should have known and was not aware of that and didn't report this until around the end of May into June of 2008. That's actually one of the issues in this case is why did the defendants fire her? We submit that that's a question of fact for the jury. We submit that they fired her because of the fact that she reported the information publicly and that in turn ended up resulting in the EFM being appointed. So your red light is on. Can I ask just, I know your red light is on, it's just one question. I'm just wondering if your client's reporting of anticipated future deficits would be a covered by the Whistleblower Protection Act because those deficits would not have occurred yet and it would be illegal to incur those deficits since the school board is not allowed to have deficits. So would that be covered under the act as would her reporting of past deficits because then she'd be reporting violations of the law that would be covered. What's your position on whether her reporting of future anticipated deficits would be covered? And as the court apparently is indicating, obviously those past deficits were a violation of the act. The deficit that the board was going to incur was in the process of incurring for that current fiscal year was a violation. And then also the Whistleblower Protection Act speaks simply to a violation of law, rule, or regulation. So the fact that someone is telling the public body that there's going to be a violation, I'm aware of no case that suggests that that would not also fall under the province of the Whistleblower Protection Act. All right. Thank you. Thank you. Good morning, Your Honors. My name is Jerome Watson and I'm appearing on behalf of all the defendants except for Jimmy Womack and Marie Thornton. Actually, I'm filling in on this case for Michelle Crockett who handled the case all the way through and submitted the term. Are Womack and Thornton still defendants here on this appeal? Excuse me? Womack and Thornton, are they still defendants? Yes, they are. They're just unrepresented? For this hearing today, yes. All right. Plaintiff basis her whistleblower's claim on two types of reports. The first reports were made in August and September of 2007 within two or three months after she started at the district. She reported to the board misconduct and mismanagement in the operation of the district. For several reasons, the lower court concluded, and we certainly believe it's correct, that there was no causal link between these reports and her termination. The reason for that is because there were no causal links between her termination and, according to the lower court, if it's that length of time, there's got to be other corroborating evidence to establish a causal link. Would those reports be protected statements? They probably would be. I'm thinking they could be protected. So the key weakness from your point of view is the causal link? Is the causal link with this one. And there's absolutely no evidence of a causal link. In fact, just the opposite. The plaintiff admits that she was commended for making those reports by both the school board and the state. And further, she said the school board was especially pleased that she reported this mismanagement and misconduct. And that, if I could add, is keeping with the school board. You know, wasn't she also told by a board member that if the board, if there had to be an emergency financial manager appointed as a result of these deficits and budget problems, that she would be fired, that she wouldn't be around to see the emergency manager? And wouldn't that sort of go contrary to your argument? Well, yes and no. For the initial reports, it had nothing to do with the emergency manager. But for the second type of reports, that's where this whole threat that was made to her by Jimmy Womack comes to the fore. Why exactly did he get so mad at her and jump up and down and really hostile? Why? Well, some background, Your Honor. With the board, this board she was reporting to, the elected board, had only been in power for less than a year. The district had been taken over by the state in 1999 until the middle of 2006. And if the district had a budget or was operating under a deficit budget, it could be taken over again. Womack did not want the district to pass a deficit budget which would allow the state to come in, mandate that there were very stringent reporting requirements, and that if the district didn't meet the requirements and didn't follow the deficit elimination plan and didn't follow or abide by any other requirements the state could impose if there was a deficit budget, an emergency manager could be appointed, which would basically be another takeover of the district. The emergency manager assumed all powers of the board. Do board members, they're not compensated, are they? Thirty-five dollars a meeting or something, if you want to call that compensation. So the second types of reports had to do with budgets. And as I read these briefs for the first time, I was a little, it seemed a little confusing between budget deficits and deficit budgets, which are two totally different concepts. And I thought Plaintiff was alleging Whistleblower's claim based on both. The budget deficit had to do with the 2007-2008 budget deficits. School year. A budget deficit occurs when the district overspent its budget for that particular school year. The problem with the 2007-2008 budget deficit was that from the time she was hired in July 2007 until, as Mr. Rivers just told you, the end of May 2008, the plaintiff, the CFO and treasurer of the district, was reporting to the board that the board would have a balanced budget or perhaps a budget surplus. It was not until the end of May 2008, near the very end of the fiscal year, this CFO and treasurer of the district apprised the board that you're going to have a budget deficit of tens of millions, which eventually grew to over a hundred million dollars. And by that late in the school year, there was no opportunity for the board to address the budget deficit with layoffs or anything of that nature, and they were pretty upset about that. So in regard to... The reason they were mad then was because she had not discovered and reported to them the, not only the past, but the future implications that there would be no, there would be a large deficit. Yeah, primarily the past, but yes, it had future implications as well. This was a huge budget deficit which could not be dealt with right at the end of the school year. You couldn't lay off teachers or close schools or whatever at the end of the year to address the 2007-2008 budget deficit. Why isn't she engaged in protected activity, fired, and fired because of her protected activity? Why isn't she making out a claim? Because it wasn't protected activity, but it was part of her job to report to the board the state of the budget, and this was typically done by the CFO. The fact that she bungled the job and instead of reporting all along that there was this big budget deficit, thought there was a balanced budget or a surplus and then reported a budget deficit near the end of the school year does not turn it into protected activity. It wasn't illegal for her to report to the board a budget deficit or anything like that. It was just poor job performance on her part. It wasn't protected activity. Let me ask you this. Wasn't her excuse for the late notice was that she had hired an audit company to look into the financial state of affairs and that they didn't complete their work until sometime in 2008? I mean, I don't know why she couldn't have looked at the records of the district to have seen something to have uncovered this financial distress on her own if she was trained to do that, but wasn't her excuse that she had this audit company working on it and they didn't give their report until sometime in 2008? That was part of it. Great City Schools, I think it was, and they were looking into the district and they spotted this huge budget deficit. The fact of the matter, as admitted in the case, is that an employee of the district had apprised her that, and this involves the fallout accounts. Was that Mr. Esaw? Yeah, Mr. Esaw. Esaw, well, he said he had told her about the budget problem in 2007, but she says he didn't tell her until 2008, so there's a factual dispute about that, is there not? Well, she claims there's a factual dispute. It's not legitimate because in the record, as a memo from Mr. Esaw in December of 2007, apprising her of the fallout account, and if she didn't lay off the various individuals that were placed in this fallout account, there would be a budget deficit, and also Mr. Esaw apprised her that she was doing things improperly by basing her budget on enrollment numbers, and Judge, when you asked the question before, how does a school district get its money, well, it gets its money from the state based upon enrollment. For every student, the state pays X thousand amount of dollars, and so if you have a lot of students, the more students, the more money you get paid. So the city of Detroit does not finance the school system? Not at all. Not at all. It's the state, and then special programs come from the federal budget. The city's only involved in the tax rolls when there's a judgment or special assessment, usually judgments. The city can certify the judgment, or the school board can certify the judgment to the city, and the judgment is placed on the tax rolls, and the citizens of Detroit have to pay for the judgment. Education, public education, is the responsibility financially of the state? Yes, sir. But anyway, as to the budget deficit, there also is not causation. She cannot show that she was terminated because she reported the budget deficit. The termination was a because she didn't figure out what was going on at the school district and take actions to address that budget deficit. She should have reported the deficit much earlier. She had reported, and my understanding is she had reported, that there had been consistent budget deficits for every year previously for some period of time. Why would anyone think that a miracle was about to happen so that there would be no budget deficit in the current year? I mean, wasn't it, wouldn't everybody think, well, we've been running all these budget deficits previously every year. We're going to have one coming up as well. Was there some question about that? There was every year, and what happens is one of the prior CEOs really described Dr. Kenneth Burnley, who's now deceased, the district was in what he called a death spiral. There were so many students leaving the district each year that the district would cut its budget 10, 15 percent every year thinking, okay, this will address the deficit, and it never did because more students left. So there would be balanced budgets submitted each year and typically the district didn't meet the budget. I want to speak very briefly about the whole concept of deficit budget, budgets, which is totally different from budget deficits. Under Michigan law, MCL 388.1702, the district is supposed to submit a balanced budget each year. That's the first sentence of the statute. The second sentence of the statute seems a bit contradictory, however, because it provides for a procedure under which the district, if there's going to be a fund balance, or in other words, a deficit for a fiscal year, to submit a two-year budget and a deficit elimination plan to balance the budget over those two years. And this two-year budget is what's being called in this case the deficit budget. So what happened at the school district is that Jimmy Womack, Joyce Hayes-Giles especially, leaned on Ms. McCray, the CFO, to submit a one-year balanced budget, and that budget was a deficit budget, even though that called for draconian cuts. The reason for that was if you submit a two-year deficit budget, the state gets involved. It requires reports, it monitors what's going on, and it can impose additional requirements on the district, and the district had just been taken over for seven years. They didn't want that again, so they said, look, you submit a one-year balanced budget. So they were trying to find a basically phony way to avoid that again, right? As they did every year with one year. Well, the whole thing was based on magic. Well, it was very optimistic when they submitted the balanced budgets for one year, but that's what they did every year up until this year. What happened with... In terms of the causal factors for her termination, what do you say was the cause or causes? Poor performance. Poor performance in not recognizing the issues that led to the deficit budget and led to the appointment of an emergency manager. What she didn't do was really her job. What if she had part of the reason for her termination being protected activity and part of her reason for termination being poor performance? What is the causation standard that applies to the Whistleblower Act? Basically, we believe it's more of a but-for standard, but for... Is there a case, there's this Supreme Court case in a different context involving federal law, the Nassar case from June of last year. Is there a Michigan case that adopts Nassar or that previously adopted that but-for standard? I haven't seen a Michigan case formally adopt Nassar. There are Michigan cases which talk about... Not one that's coming to mind. I think we've cited cases in our brief which stand for the proposition that the plaintiff would not have been terminated but for the report. And we also claim... We also take the position that the report which was approved by the board, the submission of this budget was... The deficit budget was approved by the board at an open meeting with hundreds of people there, and they knew it would be just doing their job. She had to submit that budget to the state, and the board knew she was submitting it. The board approved it and authorized her to submit it. So that was not protected activity at all. Thank you. Your Honor, very briefly, just to correct a couple of misstatements of the law. Judge standard is with respect to if part of the motivation was retaliation protected activity and part of it was poor job performance. And we cited the case of Silberstein... Silberstein versus Pro Golf America. That's 278 MISHAP446. That's at page 50 of appellant's appeal brief. That case states the standard for Michigan. It says that the plaintiff need only prove that protected activity was one of the reasons which made a difference in determining whether or not to discriminate the plaintiff. It doesn't matter if the defendant had 50 other reasons, as long as one of them was retaliation for protected activity, that's a violation of Michigan's Whistleblower Protection Act. Also, brother counsel had made several references to the fact that it was Ms. McCray's job to report on violations. We cited in appellant's brief at page 32, and that's the case of Brown versus City of Detroit. That's 478 MISH589. That case states specifically that the Whistleblower Protection Act protects employees who report misconduct as part of their job duties. Judge Merritt had asked the question... What if somebody reports misconduct and is in charge of that activity? Surely you're not protected against being fired if you say, there was a theft from the office and I stole the money. Well, I don't know that that particular factual context has come up in the... No, but hypothetically we need to be... Sure, certainly. And isn't your problem that you basically have that situation? That she says, there's going to be a... I get your opponent's language. Is it a budget deficit? There's going to be a budget deficit. Certainly. And your honor, in fact, the Brown case actually kind of touched on somewhat similar facts. In that case, very briefly, Gary Brown was the deputy chief of police for the Detroit Police Department. He reported on misconduct within the Detroit Police Department and also former Mayor Kwame Kilpatrick's Executive Protection Unit, which was comprised of police officers. He made that report to the police chief and also the mayor's office. And in fact, in that case, the Michigan Supreme Court found that that reporting of the deputy chief to not only his own police chief about misconduct within the police department, but also to the mayor's office, and the mayor was implicated in the misconduct, was protected activity under the Whistleblower Protection Act. And there's a Brown case that you're... Yes, and I cited that, as I said, your honor, at page 32 of appellant's brief. Thank you. Judge Merritt had asked with respect to the reports of the previous operating deficits, and that, your honor, respectfully goes to the entire heart of our case. The reason they were so angry with Ms. McRae is that those previous deficits were masked. In other words, the district had reported to the state that they had been operating under balanced budgets since 2004, and that was absolutely incorrect. With respect... Is there a federal claim in this case as distinguished from a state claim? Your honor, the case started with claims under the Michigan Whistleblower Protection Act, also the Federal False Claims Act, and there was a claim for a violation of 42 U.S.C. 1983 First Amendment. The First Amendment and the Federal False Claims Act claims were dismissed by the district court on summary judgment, so the only claims that are before the court now are the Michigan Whistleblower Protection Act claim. There's no diversity here, right? I'm sorry, your honor? That's not a diversity. That's a supplemental claim. Originally, it was a supplemental claim to federal claims. The federal claims are now out of the case. That is correct, your honor. We have two parties who are not diverse. That is correct, your honor. We brought this appeal before this court because of the fact that the district court rendered a ruling on these Michigan cases. Did the district court just decide to exercise supplemental jurisdiction here? It did, your honor. Made a ruling to that effect? That is correct, your honor. I'll go ahead and decide the state claim? Implicitly, your honor, there was no explicit mention of that in the district court's opinion. He just did it. The case did go through the entire discovery process. In fact, discovery was extended, and then the district court did make a ruling. I do see my time is up. I just want to very briefly just touch on the decision not to grant the motion to amend the complaint. That's a new topic that we haven't covered at all, so I think we should save that for the briefs. Okay, thank you, your honor. Thank you very much. Thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?